UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lisa Bettcher, | Case No. 20-cv-0319 (WMW/HB) |
| Plaintiff, | **ORDER** |
| v. | |
| Experian Information Solutions, Inc., | |
| Defendant. | |

This matter is before the Court on Plaintiff Lisa Bettcher's and Defendant Experian Information Solutions, Inc.'s (Experian) cross-motions for summary judgment, Experian's motion to exclude expert testimony and Bettcher's appeal of United States Magistrate Judge Hildy Bowbeer's December 23, 2020 Order, which granted Experian's motion to compel. (Dkts. 113, 120, 138, 110.) For the reasons addressed below, Bettcher's motion for partial summary judgment is denied, Experian's motion for summary judgment is granted, Experian's motion to exclude expert testimony is denied as moot, and the December 23, 2020 Order is affirmed.

## BACKGROUND

Bettcher brings this action under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*, alleging that Experian failed to "establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of [Bettcher's] credit reports and credit files it published and maintained."

On August 21, 2014, Bettcher filed for voluntary bankruptcy under Chapter 13 of the Bankruptcy Code. Her bankruptcy was discharged on September 3, 2019. Bettcher subsequently obtained a consumer credit report (Report) from Experian, which is a "consumer reporting agency" (CRA) pursuant to the FCRA. 15 U.S.C. § 1681a(f). The Report listed a Capital One credit card account with a balance of $9,900 and a past-due balance of $796 (Capital One Account).

Bettcher alleges that the Report is inaccurate and that Experian knew or should have known that its reporting of the Capital One Account was inaccurate because Experian reported Bettcher's bankruptcy and all of her other debts that had been discharged in the bankruptcy. According to Bettcher, as a result of Experian's alleged FCRA violations, her "credit file" is "severely damaged." Bettcher also alleges that, as a result of Experian's inaccurate reporting, she suffered stress, anxiety, embarrassment, and other emotional distress.

Bettcher alleges that Experian violated 15 U.S.C. § 1681e(b), which requires CRAs to assure maximum possible accuracy of the information they report. The parties cross-move for summary judgment. Experian also seeks to exclude some of the testimony of Bettcher's credit reporting procedures expert, Evan Hendricks. And Bettcher appeals the magistrate judge's order granting Experian's motion to compel. Because a decision on the appeal of the magistrate judge's order impacts what evidence may be considered when ruling on the motions for summary judgment, the Court considers the appeal of the magistrate judge's order first.

# ANALYSIS

## I. Appeal of Magistrate Judge Order

Bettcher appeals the magistrate judge's December 23, 2020 order, which granted Experian's motion to compel Bettcher to produce an authorization form that she submitted to obtain her credit report. The magistrate judge found that this authorization form is relevant and is not protected by the attorney-client privilege or the work-product doctrine.

A district court conducts an "extremely deferential" review of a magistrate judge's ruling on a nondispositive issue. *Smith v. Bradley Pizza, Inc.*, 314 F. Supp. 3d 1017, 1026 (D. Minn. 2018) (internal quotation marks omitted). Such a ruling will be modified or set aside only when the ruling is clearly erroneous or contrary to law. *Id.* (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); LR 72.2(a)(3)). A ruling is clearly erroneous when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010) (internal quotation marks omitted). A ruling is contrary to law when a court "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (internal quotation marks omitted).

Bettcher argues that, contrary to the magistrate judge's findings, the authorization form is protected by the attorney-client privilege or the work-product doctrine and is not relevant. These arguments are addressed in turn.

### A. Attorney-Client Privilege

The magistrate judge determined that the authorization form is not protected by the attorney-client privilege because it was executed so that Bettcher's prior counsel could obtain Bettcher's credit report and not for the purpose of seeking legal advice. Bettcher disagrees.

Not all communications between an attorney and the attorney's client are privileged. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977); *United States v. Bartlett*, 449 F.2d 700, 704 (8th Cir. 1971). To be protected by the attorney-client privilege, the communication must relate to legal services or advice. *See Diversified Indus.*, 572 F.2d at 602. Communications between an attorney and a client generally are protected if they "tend directly or indirectly to reveal the substance of a client confidence." *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990); *accord Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1978) (en banc) (concluding that documents were privileged "because disclosure would reveal directly or inferentially the contents of" attorney-client communications).

Here, the authorization form gave Bettcher's bankruptcy counsel permission to obtain her credit report approximately two weeks after her bankruptcy discharge. This communication between Bettcher and her former counsel does not appear to elicit or seek legal advice. Bettcher bears the burden of *providing a factual basis* for her assertion that the document is privileged. *Rabushka v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997). Absent a factual basis to the contrary, the magistrate judge's conclusion that the authorization form's purpose was not to provide or seek legal advice is not clearly

4

erroneous. Therefore, this aspect of the magistrate judge's December 23, 2020 Order is affirmed.

      **B.**     **Work-Product Doctrine**

The magistrate judge also concluded that the authorization form is not protected by the work-product doctrine. Bettcher disagrees, arguing that the authorization form is opinion work product and, therefore, enjoys near absolute immunity.

The work-product doctrine "limits the access of an opponent to materials 'prepared in anticipation of litigation or for trial.' " *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 924 (8th Cir. 1997) (quoting Fed. R. Civ. P. 26(b)(3)(A)). The party invoking the work-product doctrine "bears the burden of establishing the elements of work product immunity." *Id.* at 925. To do so, the party seeking protection must establish that the materials were prepared "in anticipation of litigation, i.e., because of the prospect of litigation." *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002). The United States Court of Appeals for the Eighth Circuit has "distinguish[ed] between two kinds of work product: ordinary work product, which includes raw factual information, and opinion work product, which encompasses counsel's mental impressions, conclusions, opinions or legal theories." *In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) (internal quotation marks omitted). Opinion work product "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Id.* (internal quotation marks omitted).

5

Here, as the magistrate judge observed, Bettcher signed the authorization form on September 16, 2019, which is before she obtained her Experian credit report. Because litigation based on an FCRA claim could not have been anticipated absent knowledge that there was an error on Bettcher's credit report, the magistrate judge reasoned, the authorization form could not have been prepared because of the prospect of this specific litigation.

Bettcher argues that the magistrate judge erroneously equated the authorization form to non-privileged business advice. Experian counters that nothing in the record demonstrates that the authorization form was prepared because of the prospect of litigation rather than in the ordinary course of business. Determining whether a document was prepared in anticipation of litigation is a factual matter. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987). Documents prepared in the ordinary course of business are not protected work product. *Id.*; *see also United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984) ("Thus, where the attorney acts merely as a . . . scrivener for the client, or as a business adviser, the privilege is inapplicable." (internal citations omitted)).

The magistrate judge concluded that the authorization form was prepared for the purpose of obtaining Bettcher's credit report and investigating credit report inaccuracies. And the arguments to the contrary advanced by Bettcher's counsel in a memorandum of law are insufficient to satisfy Bettcher's evidentiary burden. *See Rabushka*, 122 F.3d at 565; *see also* 8 Charles Alan Wright et al., *Federal Practice & Procedure* § 2016.1 (3d ed.).

Bettcher maintains that she should have had an opportunity to submit an affidavit "given the sanctity of the attorney-client privilege before being compelled to disclose" the authorization form. But Bettcher had the opportunity to submit an affidavit to the magistrate judge. She failed to do so. Bettcher's argument fails to account for the fact that the party seeking protection, Bettcher, has the burden to establish that the materials were prepared "in anticipation of litigation." *PepsiCo*, 305 F.3d at 817. Bettcher did not do so when opposing Experian's motion to compel, and she fails to supply legal authority providing that the Court must give her a second opportunity.

Therefore, Bettcher's argument that the authorization form is protected by the work-product doctrine is rejected, and this aspect of the magistrate judge's December 23, 2020 Order is affirmed.

### C.    Relevance

The magistrate judge also concluded that the authorization form is relevant. Bettcher disagrees, arguing that Experian does not have a substantial need for the document.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Such information "need not be admissible in evidence to be discoverable." *Id.* Experian argues that the authorization form is relevant to its defense, including the issue of Bettcher's damages. As the magistrate judge observed, the scope of relevance includes a defendant's defenses and the amount of damages. *Id.* (providing that discovery includes information "relevant to any party's claim *or defense*" (emphasis

added)); *see Simon*, 816 F.2d at 404; *United States v. Beatrice Foods Co.*, 52 F.R.D. 14, 18 (D. Minn. 1971) (ordering party to answer interrogatory that might be relevant on the issue of damages). Experian contends, and Bettcher does not dispute, that the authorization form is relevant to her damages. Although Bettcher argues that Experian does not have a substantial need for the authorization form, a party seeking discovery must demonstrate a substantial need only when the item sought for discovery is protected by the work-product doctrine. *See In re Murphy*, 560 F.2d 326, 334 (8th Cir. 1977). Because the authorization form is not protected by the work-product doctrine, Bettcher's argument regarding the presence or absence of a substantial need is inapposite. Therefore, the authorization form is relevant, and this aspect of the magistrate judge's December 23, 2020 Order is affirmed.

In summary, the magistrate judge's December 23, 2020 Order is neither clearly erroneous nor contrary to law. Therefore, it is affirmed.

## II.     Cross-Motions for Summary Judgment

The parties cross-move for summary judgment. Experian moves for summary judgment in full. Bettcher moves for summary judgment on the issue of liability, reserving the issue of damages for a jury determination.

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When

8

deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). When asserting that a fact is genuinely disputed, the nonmoving party must "submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts" in support of that assertion. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A). A nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted).

Bettcher alleges that Experian willfully or negligently violated the FCRA. "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To prevail on a claim under Section 1681e(b), Bettcher must demonstrate that: "(1) Experian failed to follow reasonable procedures intended to assure the accuracy of its reports, (2) [Experian] reported inaccurate credit information about her, (3) she suffered harm and (4) Experian's failure to follow reasonable procedures was the cause of her harm." *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1101 (D. Minn. 2011). Because the issue of whether the challenged credit information is accurate is a threshold question, *Gross v. Private Nat'l Mortg. Acceptance Co.*, 512 F. Supp. 3d 423, 426 (E.D.N.Y. 2021), the Court addresses accuracy first.

9

### A.     Inaccurate Credit Information

The parties dispute whether Experian reported inaccurate information about Bettcher's credit.

A credit report can be inaccurate in two ways: it can be factually or technically inaccurate, or it can be materially misleading. *See Beseke v. Equifax Info. Servs. LLC*, 420 F. Supp. 3d 885, 901 (D. Minn. 2019) ("The Eighth Circuit has no binding precedent on whether a technically accurate but misleading report can qualify as inaccurate for the purposes of § 1681e(b) of the FCRA." (citing *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 827 n.2 (8th Cir. 2013))). Here, Bettcher's Capital One Account was discharged in bankruptcy on September 3, 2019. In approximately November 2019, Experian reported that Bettcher's Capital One Account had a balance of $9,900 with a past-due balance of $796 as of June 2014. Specifically, the Report states that the Capital One Account is "Closed.  $796 past due as of Jun[e] 2014."

Experian argues that it reported historically accurate information because Experian's reporting of the Capital One Account states that, as of June 2014, Bettcher owed a balance of $9,900 and her payments were past due. Bettcher argues that, if Experian had accurately reported the Capital One Account, it would have reported that the account was "Discharged through Bankruptcy Chapter 13," similar to how Experian identified other accounts discharged in Bettcher's bankruptcy. As such, in November 2019, the Report was not as up-to-date as possible. Therefore, the Report arguably was factually inaccurate. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021) (concluding a credit report was inaccurate when it listed balances owed, past-due

10

amounts and the length of time past due for accounts discharged in bankruptcy); *cf. Midland Funding, LCC v. Johnson*, 137 S. Ct. 1407, 1414 (2017) (observing that, as a general matter, a bankruptcy discharge "means that the debt (even if unenforceable) will not remain on a credit report").

Some courts have concluded that reporting historically accurate information is not a violation of Section 1681e(b). *See Alsibai v. Experian Info. Sols., Inc.*, 488 F. Supp. 3d 840, 846 (D. Minn. 2020) (collecting cases). And courts have determined that it is not misleading for a CRA to report historically accurate information as long as the CRA clearly indicates that there is no ongoing obligation on the account. *Id.* Although the Eighth Circuit has not determined whether a technically accurate but materially misleading report qualifies as inaccurate for the purpose of a Section 1681e(b) claim, *see Beseke*, 420 F. Supp. 3d at 901, the Court will consider whether the Report is materially misleading as to the Capital One Account.

The Capital One Account is marked as "Closed" in the "Status" section of the Report and lists a "Recent balance" of "$9,900," an account status of "$796 past due" and a $199 monthly payment. Although both the recent balance and the status indicate that these amounts were past due as of "Jun[e] 2014," based on this evidence a reasonable juror could conclude that Bettcher owed a balance, was behind on her payments in the amount of $796 and was making monthly payments in the amount of $199. *Cf. Rodriguez v. Trans Union LLC*, No. 1:19-CV-379-LY, 2019 WL 5565956, at *3 (W.D. Tex. Oct. 28, 2019) (finding that credit report was not inaccurate when report stated that $345 was paid monthly but also that the account was closed, charged off, paid in full, and

11

had a $0 balance); *Gibson v. Equifax Info. Servs., LLC*, No. 5:18-cv-00465-TES, 2019 WL 4731957, at *4 (M.D. Ga. July 2, 2019) (finding that credit report was not inaccurate when monthly payments were included, but the accounts were shown as closed and having $0 balances). But, even if the Eighth Circuit recognizes that materially misleading information can support an FCRA Section 1681e(b) claim, and the Report in this case is materially misleading, Bettcher's FCRA claims fail here because, as addressed below, Bettcher has not demonstrated that she sustained actual damages, that Experian acted willfully or that Experian failed to follow reasonable procedures.

### B.    Actual Damages

Experian argues that Bettcher cannot show that Experian caused her any actual damages. Bettcher argues that she presents ample evidence from which a reasonable jury could conclude that Experian caused her to suffer damages.

A negligence claim under the FCRA requires a plaintiff to demonstrate "actual damages sustained by the consumer as a result of the failure" to comply with FCRA requirements. 15 U.S.C. § 1681o(a)(1). Here, in seeking summary judgment on the issue of actual damages, Experian argues that: (1) there is no evidence that Bettcher was denied credit based on Experian's reporting of the Capital One Account; (2) nothing in the record shows that any denial or adverse action that occurred after Bettcher's bankruptcy discharge was based on Experian's reporting of the Capital One Account, as opposed to the bankruptcy itself; and (3) Bettcher's allegations of emotional distress are supported by her testimony alone, which Experian contends is insufficient. The actual damages in dispute are addressed in turn.

First, the parties dispute whether Bettcher was denied credit based on Experian's reporting of the Capital One Account. Experian argues that there is no evidence that Bettcher was denied credit based on Experian's reporting of the Capital One Account. Experian further argues that Bettcher's alleged car-loan denial occurred *before* her bankruptcy was discharged. The declaration of Cymone Rogers, a legal compliance specialist for MyExperian, Inc., provides that five credit applications or "hard inquiries" appear on Bettcher's credit report, including one involving Capital One Auto Finance dated August 24, 2019. Rogers attests that Bettcher received an auto loan from Village Bank on or around August 26, 2019. Critically, both of these auto-loan related inquiries occurred *before* Bettcher's bankruptcy discharge on September 3, 2019. And counsel for Bettcher conceded as much at the July 14, 2021 hearing. Therefore, Bettcher has not demonstrated that there is a genuine dispute of material fact as to whether Experian's reporting of the Capital One Account resulted in a denial of credit.

Second, the parties dispute whether any adverse actions resulted from Experian's reporting of the Capital One Account, rather than from the bankruptcy itself. Specifically, Experian maintains that Bettcher has not demonstrated evidence of any credit denial or adverse action that occurred after Bettcher's bankruptcy discharge, as opposed to resulting from the adverse credit implications of a bankruptcy itself. Bettcher argues that she suffered reduced credit access. But despite Bettcher arguing that "Experian **also** knows there are additional consequences to inaccurately reporting the amount of debt specific to consumers," Bettcher provides no specific evidence of such "additional consequences" here. Consequently, Bettcher has not met her burden of

13

identifying evidence in the record to demonstrate a genuine dispute of material fact as to this issue.

Finally, the parties dispute whether Bettcher has identified sufficient record evidence of emotional distress to withstand a motion for summary judgment. Actual damages under the FCRA include emotional-distress damages that are "supported by competent evidence of 'genuine injury,' which 'may be evidenced by one's conduct and observed by others.' " *Taylor*, 710 F.3d at 828 (quoting *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978)); *see also Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1244 (D. Minn. 2013) ("While an emotional distress injury may be established solely by a plaintiff's own testimony, the evidence presented by [the plaintiff] does not establish the type of concrete emotional distress that is required to create a genuine injury and actual damages and survive summary judgment under Eighth Circuit law.").

Here, there is no evidence that Bettcher received treatment for any emotional distress experienced, that she suffered physical injury as a result of her emotional distress or that any other person observed her alleged emotional distress. Because Bettcher's allegations of emotional distress lack evidentiary support other than her testimony alone, this evidence is insufficient to demonstrate a genuine dispute of material fact. *See Taylor*, 710 F.3d at 828; *cf. Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (holding that evidence about a plaintiff's well-being, including testimony as to specific examples of harassment and financial hardship resulting from an incorrect criminal background report, supported a jury award for emotional-distress damages).

Because Bettcher has not met her burden of demonstrating that she sustained actual damages, Bettcher's FCRA claim of negligent noncompliance, pursuant to 15 U.S.C. §§ 1681e(b), 1681o, fails. *See Taylor*, 710 F.3d at 828 (agreeing "with other circuits that a consumer must present competent evidence of actual injury to state a claim under the FCRA" and affirming grant of summary judgment as to a FCRA negligent-noncompliance claim); *accord Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) (observing that "failure to produce evidence of damage resulting from a FCRA violation mandates summary judgment").

Experian's motion for summary judgment as to Bettcher's FCRA negligence claim pursuant to 15 U.S.C. §§ 1681, 1681o, is granted. However, because the FCRA allows a plaintiff to recover statutory damages for willful violations of the FCRA, a claim asserting a willful violation of the FCRA does not require proof of injury. *Taylor v. Inflection Risk Sols., LLC*, 519 F. Supp. 3d 517 (D. Minn. 2021). Accordingly, the Court next examines Bettcher's claim that Experian willfully violated the FCRA.

### C. Willfulness

The parties dispute whether Experian willfully violated the FCRA. Experian argues that Bettcher cannot demonstrate that Experian's alleged violation of the FCRA was willful. Bettcher argues that Experian's violation was willful or, in the alternative, that genuine issues of material fact preclude summary judgment in favor of Experian as to willfulness.

The FCRA prohibits willful violations of the statute. 15 U.S.C. § 1681n. Willful failure to comply with the FCRA does not require a showing of actual injury,

15 U.S.C. §1681n(a), and includes both knowing and reckless violations of the statute, *see Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–57 (2007). Recklessness involves an unjustifiably high risk of harm that was either known or so obvious that it should have been known. *Id.* at 68. An erroneous reading of a statute is willful only if it is "objectively unreasonable." *Id.* at 69.

Experian argues that the reason that it did not report the Capital One Account as discharged in bankruptcy is because Capital One ceased reporting information about this account in June 2014. Bettcher argues that Experian knows that the methodology that Experian uses will result in some reporting inaccuracies. Accordingly, Bettcher argues, such disregard of an unjustifiably high risk of harm constitutes a reckless and, therefore, willful violation of Section 1681e(b). But Bettcher has not identified, and the Court's research has not found, any applicable legal authority concluding that the procedures Experian used here for reporting Chapter 13 bankruptcies willfully violate the FCRA. And Bettcher identifies no evidence that such an inaccuracy, to the extent there is one here, occurred more than occasionally.

Bettcher next argues that Experian is required by the Federal Trade Commission (FTC) to report that there is a zero-balance due on accounts discharged in bankruptcy. Experian counters with a different FTC regulation, which provides that Section 1681e(b) does *not* require error-free reports. The FTC regulation on which Bettcher relies provides that "[a] consumer report may include an account that was discharged in bankruptcy . . . as long as it reports a zero balance due to the fact that the consumer is no longer liable for the discharged debt." 16 C.F.R. pt. 600 app'x § 607(b)(6). The FTC regulation on which

16

Experian relies provides that "[i]f a consumer reporting agency accurately transcribes, stores and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate this section simply by reporting an item of information that turns out to be inaccurate." 16 C.F.R. pt. 600 app'x § 607(b)(3)(A).

      Here, in light of the conflicting FTC regulations the parties cite, the guidance the FTC provides does not result in a conclusion that Experian's reading of these FTC regulations is "objectively unreasonable." *Safeco*, 551 U.S. at 69. Moreover, when comparing Experian's conduct here to the conduct in cases involving a willful violation of the FCRA, the allegations and the evidence in this case fall short. *Compare Millstone v. O'Hanlon Reps., Inc.*, 528 F.2d 829, 831, 834–35 (8th Cir. 1976) (concluding that the defendant willfully violated the FCRA by reporting several derogatory statements relating to the plaintiff's character, including rumored drug use, eviction from prior residences and complete lack of discipline of his children, all of which were false, and which came from one person biased against the plaintiff), *with Hauser v. Equifax, Inc.*, 602 F.2d 811, 815, 818 (8th Cir. 1979) (affirming judgment as a matter of law and holding that CRA did not willfully violate the FCRA by inaccurately describing the plaintiff's employment duties), *and Smith*, 837 F.3d at 610–11 (concluding that the district court should have granted judgment as a matter of law on a willfulness claim in favor of the CRA because the CRA had a 0.2 percent dispute rate and a procedure to quickly correct mistakes); *see also Losch*, 995 F.3d at 947 ("A violation isn't willful

where a defendant 'followed an interpretation that could reasonably have found support in the courts . . . .' " (quoting *Safeco*, 551 U.S. at 70 n.20)).

Therefore, assuming without deciding that Experian reported inaccurate information, there is insufficient evidence on this record for a jury reasonably to conclude that Experian did so willfully.

### D. Reasonable Procedures

The parties also dispute whether Experian's credit-reporting procedures are reasonable. *See Paul*, 793 F. Supp. 2d at 1101. Because Bettcher's summary-judgment motion fails on other grounds, this Court need not determine whether Experian's procedures for reporting Chapter 13 bankruptcies are reasonable.

In summary, Experian's motion for summary judgment is granted and Bettcher's motion for partial summary judgment is denied.

### III. Motion to Exclude Expert Testimony

Experian moves to exclude certain testimony from Bettcher's expert, Hendricks. Bettcher opposes Experian's motion. Because the Court has granted Experian's motion for summary judgment without relying on any facts in Hendricks's expert report, the Court need not determine whether testimony from Hendricks should be excluded. Experian's motion to exclude Hendricks's testimony, therefore, is denied as moot.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. The magistrate judge's December 23, 2020 Order, (Dkt. 106), is **AFFIRMED**.

2. Plaintiff Lisa Bettcher's motion for partial summary judgment, (Dkt. 113), is **DENIED**.

3. Defendant Experian Information Solutions, Inc.'s motion for summary judgment, (Dkt. 120), is **GRANTED**.

4. Defendant Experian Information Solutions, Inc.'s motion to exclude expert testimony, (Dkt. 138), is **DENIED AS MOOT**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  September 21, 2021                          s/Wilhelmina M. Wright
                                                    Wilhelmina M. Wright
                                                    United States District Judge